**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-CV-24267-GAYLES/TORRES

DR. MELISSA SELINGER,

     Plaintiff,

v.

KIMERA LABS, INC., *et al.*,

     Defendants.

_____/

**REPORT AND RECOMMENDATION**
**ON KIMERA LABS, INC. AND ALEXANDER JELINEK'S**
**PARTIAL MOTIONS TO DISMISS THE AMENDED COMPLAINT**

This matter is before the Court on Kimera Labs, Inc.'s ("Kimera") motion to dismiss the amended complaint, [D.E. 119], and Alexander Jelinek's ("Jelinek") motion to dismiss the amended complaint [D.E. 120]. Dr. Melissa Selinger ("Selinger") responded to both motions on September 20, 2021. [D.E. 138; 139]. Jelinek replied on September 27, 2021. [D.E. 151]. With leave, Kimera replied on October 4, 2021. [D.E. 158]. Therefore, Kimera and Jelinek's motions are now ripe for disposition. After careful consideration of the motions, responses, replies, relevant authority, and for the reasons discussed below, the motions to dismiss should be **DENIED**.[1]

---

[1]     On October 8, 2021, the Honorable Darrin P. Gayles referred these motions to dismiss to the undersigned Magistrate Judge for disposition. [D.E. 163].

## I.  BACKGROUND

As a threshold matter, the arguments presented by Kimera and Jelinek are largely duplicative of one another. So much so, in fact, that it highlights a potential violation of Judge Gayles' Order requiring multiple defendants to file *joint* motions absent clear conflicts of position, which must be explained by the parties in their separate motions. [D.E. 4]. No such explanation has been articulated by either party. But because the Court has already assessed both Kimera and Jelinek's arguments, as well as Selinger's separate (and understandably duplicative) counter-arguments, the Court will reach the merits and leave to Judge Gayles to determine what sanctions, if any, are appropriate in this case upon the filing of any objections (if any). For the sake of judicial efficiency, therefore, the Court has consolidated its analysis into this single Report and Recommendation.

On October 16, 2020, Selinger filed her original 13-count complaint against Kimera, Jelinek, and Duncan Ross ("Ross"),[2] which asserted an array of civil rights violations, breach of contract, promissory estoppel, quantum meruit, fraudulent inducement, negligent supervision, battery, and intentional infliction of emotional distress. [D.E. 1]. With leave, Selinger filed her 17-count amended complaint on August 4, 2021. [D.E. 95]. Therein, Selinger dropped her promissory estoppel claim, reasserted the balance of her original claims, and added the five new claims:

COUNT VIII: Negligent Misrepresentation against Kimera;

COUNT XIV: Negligent Infliction of Emotional Distress against Ross and Kimera;

---

[2]      Ross has not moved to dismiss any portion of the amended complaint.

COUNT XV: Negligent Infliction of Emotional Distress against Jelinek and Kimera;

COUNT XVI: Invasion of Privacy (Public Disclosure of Private Facts) against Ross and Kimera; and

COUNT XVII: Defamation against Kimera, Ross, and Jelinek.

[D.E. 95]. It is these five claims that are the subject of Kimera and Jelinek's motions. Kimera seeks to dismiss each of the five new claims alleged against it pursuant to Federal Rule of Civil Procedure 12(b)(6). [D.E. 119]. For similar reasons, Jelinek seeks to dismiss the two new claims that are alleged against him. [D.E. 120]. Neither Kimera nor Jelinek seek to dismiss the balance of Selinger's amended complaint.

## II.   *APPLICABLE PRINCIPLES AND LAW*

Under Rule 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions, or labels will not survive a Rule 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

3

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012). The Eleventh Circuit has endorsed a "two-pronged approach" in applying these principles: (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (internal quotations omitted).

### III.   ANALYSIS

Initially, Selinger argues that Jelinek's motion to dismiss should be denied as moot because Jelinek has already filed an answer to the amended complaint. Although Jelinek has filed an answer, its responses to Count XV and Count XVII expressly state that "no responses" to the paragraphs within those counts are necessary because Jelinek contemporaneously filed the instant motion to dismiss. [D.E. 121]. It is, therefore, a partial answer. None of the cases cited by Selinger to support her mootness argument appear to involve partial answers. *See Brisk v. City*

*of Miami Beach, Fla.*, 709 F. Supp. 1146 (S.D. Fla. 1989); *Dugan v. Middlebrooks*, 2015 WL 1063935 (M.D. Fla. Mar. 11, 2015); *Smith v. Bank of Am., N.A.*, 2014 WL 897032 (M.D. Fla. Mar. 6, 2014).

Nevertheless, some of the material allegations that relate to Count XV and Count XVII have been answered by Jelinek. For example, Jelinek expressly denies Selinger's allegation that he committed a battery upon Selinger while she was in a state of diminished capacity. [D.E. 121, ¶ 78]. As the Court will explain below, this allegation is a critical component of the claim alleged against Jelinek in Count XV. Similarly, Jelinek partially denies Selinger's allegation concerning an email sent by Jelinek, and the substance of this email factors into the defamation claim levied against him in Count XVII. [D.E. 121, ¶ 91].

Given that the cases cited by Selinger do not appear to be precisely on point, and because the Court recommends denial of Jelinek's motion on the merits, the Court declines to assess (as unlikely as it may be) whether Jelinek's motion to dismiss has been mooted by his subsequently filed partial answer. Accordingly, the Court will discuss Jelinek's arguments for partial dismissal of the amended complaint in turn.

A.   ***Count VIII, the Negligent Misrepresentation claim against Kimera, should not be dismissed.***

Federal Rule of Civil Procedure 8(d) permits parties to plead alternative claims; it also allows parties to plead inconsistent claims. Despite this basic rule of pleading, Kimera first contends that Selinger's negligent misrepresentation claim should be dismissed because it is duplicative of her breach of contract and fraudulent inducement claims. This contention is erroneous, and Kimera's error is highlighted

by the case that it cites in support of its argument: *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256-57 (S.D. Fla. 2014). *Klayman*, apart from dealing with a summary judgment motion, stands for the proposition that ultimate recovery cannot be had for multiple claims that rely entirely on the same facts. Accordingly, Kimera has flagged a potential election-of-remedies problem that may flow from Selinger's negligent misrepresentation claim. But that is not a problem that requires dismissal. *See, e.g., Fed. Deposit Ins. Corp. for BankUnited, F.S.B. v. Heritage Title & Escrow, Inc.*, No. 12-cv-60944, 2013 WL 12138552, at *1 (S.D. Fla. Jan. 18, 2013) (denying motion to dismiss attacking complaint for breach of contract and negligent misrepresentation because Rule 8 permits alternative pleading).

Kimera next contends that Selinger's negligent misrepresentation claim, which is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), does not contain sufficient factual allegations to withstand a motion to dismiss. The Court agrees that Selinger's negligent misrepresentation claim is subject to Rule 9(b). *See, e.g., Grovenor House, LLC v. E.I. Du Pont De Nemours & Co.*, No. 09-cv-21698, 2010 WL 883647, at *2 (S.D. Fla. Mar. 8, 2010). The Court finds, however, that Selinger has sufficiently alleged this cause of action.

Kimera's argument for dismissal must be read in context with the elements of negligent misrepresentation and pleading requirements imposed by Rule 9(b). The elements of negligent misrepresentation are as follows:

> (1) a misrepresentation of material fact that the defendant believed to be true but which was in fact false; (2) that defendant should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) the plaintiff

acted in justifiable reliance upon the misrepresentation, resulting in injury.

*Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*, 232 So. 3d 502, 505 (Fla. 1st DCA 2017). Rule 9(b) permits the elements of "[m]alice, intent, knowledge, and other conditions of a person's mind" to be alleged generally, however, it requires the circumstances constituting the negligent misrepresentation to be alleged with particularity. Accordingly, a plaintiff may satisfy Rule 9(b)'s particularly requirement by stating:

> (1) precisely what statements or omissions were made; (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making certain statements); (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

*Grovenor House*, 2010 WL 883647, at *2 (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

Considering the elements of the tort, the requirements of Rule 9(b), and the allegations made in the amended complaint, Kimera argues that Count VIII must be dismissed because Selinger fails (1) to precisely identify the misrepresentations, (2) to identify the time, place, and speaker of each misrepresentation, and (3) to provide the content of the statements and the manner in which they misled the plaintiff. This argument does not withstand scrutiny.

It is clear from the face of the amended complaint that the alleged misrepresentations relate to Kimera's statements concerning Selinger's entitlement to equity in the company. With regard to the content of these statements, how and when they were made, who made them, and the manner in which they misled

Selinger, let's begin with the signed and dated letter from Kimera's CEO that Selinger attached to and incorporated within her amended complaint. [D.E. 95-1].

In an August 1, 2018 letter from Kimera's CEO to Selinger that concerns her employment with Kimera, the first paragraph explains that "[Selinger] will be immediately eligible for Stock Option and or Stock Ownership plans commensurate with other key members of the Kimera Management Team." [D.E. 95-1 at 1]. Thus, from this letter alone, we know what was said, who said it, how it was said, and when it was said. Considering that Selinger also alleges that she never received any equity in Kimera, [D.E. 95, ¶ 43], the manner in which Selinger was misled is also sufficiently alleged because the promised stock options and/or stock ownership plans never materialized even though she worked for Kimera.

But, according to the amended complaint, the August 1, 2018 letter was not the only time that Kimera communicated to Selinger that equity in the company was part of her compensation package. In early 2018, Kimera's CEO allegedly told her that she would be entitled to equity and she relied upon this statement when deciding to take the job. [D.E. 95, ¶¶ 21-26]. Additionally, Selinger alleges that Kimera's CFO expressed on August 20, 2018 that he "wanted [Selinger] to have ownership in the company" and would present her with "a specific plan within the subsequent weeks." [D.E. 95, ¶ 30]. Then, during a dinner meeting that took place days later, Kimera's CFO allegedly told Selinger that 20% of the equity in Kimera was to be divided between the company's first four employees – a group that included Selinger. [D.E.

95, ¶ 31]. Again, Selinger has alleged that she worked for Kimera for quite some time but never received equity in the company that employed her.

There may indeed be several legal flaws with this claim, either at summary judgment or at trial.  But our task for now is limited to simply evaluating the pleadings on their face.  By that limited measure, the Court finds that the amended complaint satisfies Rule 9(b)'s heightened pleading standard. Accordingly, Kimera's motion to dismiss Count VIII should be **DENIED**.

### B.  _Count XIV and Count XV, the Negligent Infliction of Emotional Distress claims against Kimera, Ross, and Jelinek, should not be dismissed._

Kimera and Jelinek contend that the amended complaint fails to sufficiently allege facts that would satisfy the elements for negligent infliction of emotional distress. Citing to pre-2007 case law, they define the elements of this tort as follows:

> (1) the plaintiff must suffer a discernable physical injury; (2) the physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person.

_LeGrande v. Emmanuel_, 889 So. 2d 991, 995 (Fla. 3d DCA 2004); _Zell v. Meek_, 665 So. 2d 1048, 1054 (Fla. 1995). Kimera and Jelinek are not wrong in their definition of the tort itself, however, they are mistaken about its applicability to Selinger's cause of action.

To put it simply, Count XIV and Count XV allege simple negligence claims against Kimera and Jelinek that stemmed from physical impacts and resulted in

emotional distress.³  Accordingly, these are the elements that must be sufficiently pled: (1) the defendant owed the plaintiff a legal duty to conform to a certain standard of conduct; (2) the defendant breached that duty by failing to conform to that standard of conduct; (3) there is a "reasonably close causal connection" between the nonconforming conduct and the resulting harm to the plaintiff; and (4) the plaintiff suffered some actual harm. *See, e.g., Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007).

To understand why Selinger has sufficiently pled her negligence claim against Kimera and Jelinek, the Court must first discuss why the elements of negligence apply to Selinger's claims as opposed to the different elements of negligent infliction of emotional distress, which Kimera and Jelinek believe to be applicable and, in their view, insufficiently alleged in the amended complaint. Kimera and Jelinek's confusion appears to arise from their misunderstanding of Florida's "impact rule."

In *Willis v. Gami Golden Glades*, LLC, 967 So. 2d 846 (Fla. 2007), the Supreme Court of Florida explained that the prerequisites for recovery for negligent infliction of emotional distress differ depending on whether the plaintiff has suffered a "physical impact" from an external force.

> If the plaintiff has suffered an impact, Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself. If, however, the plaintiff has not suffered an impact, the complained-of mental distress

---

³    The Court recognizes that Count XIV and Count XV are described as claims for "Negligent Infliction of Emotional Distress," however, Rule 8 does not require the Court to put form over function. Therefore, the Court acknowledges that Count XIV and XV are functionally claims for negligence even though Selinger may have been overly descriptive when titling her claims for relief.

must be "manifested by physical injury," the plaintiff must be "involved" in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment "within a short time" of the incident.

*Willis*, 967 So. 2d at 850 (quoting *Eagle-Picher Indus., Inc. v. Cox*, 481 So. 2d 517, 526 (Fla. 3d DCA 1985)). Based on the foregoing, Kimera and Jelinek's arguments concerning whether Selinger adequately pled her negligent infliction of emotional distress claims would be well taken if Selinger did *not* also allege that she suffered a physical impact. But Selinger has alleged multiple physical impacts[4] and, therefore,

---

[4]    With regard to the physical impacts allegedly caused by Ross, which form the basis for vicarious liability against Kimera in Count XIV, the Court finds Kimera's argument that the amended complaint lacks sufficient factual description of the alleged impacts to be wholly unpersuasive. The amended complaint clearly describes one instance in which Ross, purportedly on Kimera property, pressured Selinger to join Ross and his girlfriend in a hot tub where Ross then allegedly battered Selinger. [D.E. 95, ¶¶ 56-57]. The amended complaint further alleges that Ross battered Selinger for a second time later that night. [D.E. 95, ¶ 57]. It also describes a separate incident where Ross "cornered and forced" another battery upon Selinger while the two were alone in Kimera's laboratory. [D.E. 95, ¶ 58]. These incidents are further described as "non-consensual sexual contact in the workplace." [D.E. 95, ¶ 63]. Under *Willis*, these are sufficient allegations of physical impacts. *Willis*, 967 So. 2d at 850 ("The essence of impact, then, it seems, is that the outside force or substance, no matter how large or small, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter into the plaintiff's body.").

With regard to the physical impacts allegedly caused by Jelinek, which form the basis of Selinger's negligence claim against Jelinek as well as the basis for vicarious liability against Kimera in Count XV, the Court again finds Kimera's argument that the amended complaint lacks sufficient factual description of the alleged impact to be grossly meritless.  The amended complaint clearly describes an incident between Jelinek and Selinger in which Jelinek, under the guise of helping Selinger realize her full compensation package, proceeded to pressure Selinger into consuming "multiple rounds of alcoholic drinks" before he committed a battery upon her while she was in a state of "diminished capacity." [D.E. 95, ¶ 74-78]. Selinger describes Jelinek's conduct as "predatory" and alleges that, after that incident, Jelinek continued to "sexually take advantage" of Selinger. [D.E. 95, ¶ 80-81]. Instead

Florida law permits her to recover for the emotional distress that stemmed from those impacts through a common law negligence claim. *See id.*; *see also City of Boynton Beach v. Weiss*, 120 So. 3d 606, 610-12 (Fla. 4th DCA 2013) (affirming damage award where the jury found that the city had negligently inflicted emotional distress on a plaintiff who was battered by one of the city's police officers). Having determined the proper elements for the tort at issue, the Court must next decide whether the amended complaint sufficiently alleges facts to satisfy those elements with respect to Count XIV and Count XV.

### 1.   *Negligence is sufficiently alleged against Ross and Kimera in Count XIV.*

Regarding *duty*, Selinger alleges that Ross and Kimera "had a duty to treat [her] in a professional and nondiscriminatory manner in the workplace, to supervise her appropriately, and to ensure a safe working environment." [D.E. 95, ¶ 193]. Accepting these facts as true and drawing all reasonable inferences in the light most favorable to Selinger, as the Court must do on a motion to dismiss, the Court finds the duty element to be sufficiently alleged considering that Selinger also alleges, in numerous places throughout her amended complaint, that she was employed by Kimera and that Ross served as its CEO.

---

of feigning confusion like Kimera, Jelinek describes Selinger's negligent infliction of emotional distress claim as mere "buyer's remorse" after sexual intercourse. [D.E. 151 at 4]. Accordingly, Jelinek argues that non-consensual sexual intercourse is legally insufficient to qualify as a physical impact for the purposes of Florida's impact rule. Jelinek's argument would be laughable but for its abhorrent disregard of the serious nature of these allegations. Under *Willis*, this is a sufficient allegation of physical impact. *Willis*, 967 So. 2d at 850.

Regarding *breach*, Selinger alleges that Ross and Kimera "breached this duty by negligently inflicting severe emotional distress on her." [D.E. 95, ¶ 194]. Standing alone, this allegation is little more than a threadbare legal conclusion. But, when viewed in context with the other allegations concerning the physical impact visited upon Selinger by Ross, the Court finds that the breach element has been sufficiently alleged.

Regarding *causation*, Selinger alleges that the "multiple incidents" of physical contact between Selinger and Ross "caused a physical impact" on Selinger. [D.E. 95, ¶ 195]. The "multiple incidents" of physical contact is clearly a reference to other allegations made by Selinger that Ross engaged in non-consensual sexual contact with her. Accordingly, Selinger further alleges that this conduct was the "actual and reasonably foreseeable cause of emotional distress and psychological damage" to Selinger. [D.E. 95, ¶ 199]. Given the serious nature of the physical impacts, the Court finds that causation has been sufficiently alleged.

Regarding *damage*, Selinger alleges that, due to the physical impact visited upon her by Ross, she "suffered severe emotional distress and psychological harm." [D.E. 95, ¶ 196]. To reiterate, Florida law allows for recovery for emotional distress that has been caused by a physical impact. Thus, when viewed in context with the allegations that Selinger endured non-consensual sexual contact from Ross, the Court finds that Selinger has plausibly alleged the damage element of her negligence claim.

Regarding *vicarious liability*, it is worth noting that, although Kimera spilled much ink concerning the proper elements associated with Count XIV and Count XV,

13

its motion does not expressly challenge the allegation that Kimera is vicariously liable for the actions of Ross.[5]  The Court will not make this argument for Kimera. Accordingly, the Court finds Selinger's allegation that Kimera is liable for Ross' conduct "under the doctrine of *respondeat superior*" to be sufficient for the purposes of a motion to dismiss. [D.E. 95, ¶ 200]. This finding is further supported by other allegations in the amended complaint that concern Ross' role at Kimera and the location of the alleged non-consensual sexual contact. Thus, in summary, Kimera's motion to dismiss Count XIV should be **DENIED**.

### 2. *Negligence is sufficiently alleged against Jelinek and Kimera in Count XV.*

Regarding *duty*, Selinger alleges that Jelenik and Kimera "had a duty to treat [her] in a professional and nondiscriminatory manner in the workplace, to supervise her appropriately, and to ensure a safe working environment." [D.E. 95, ¶ 204]. Accepting these facts as true, the Court finds the duty element to be sufficiently alleged considering that Selinger also alleges, in numerous places throughout her amended complaint, that she was employed by Kimera and that Jelinek was its CTO.

Regarding *breach*, Selinger alleges that Jelenik and Kimera "breached this duty by negligently inflicting severe emotional distress on her." [D.E. 95, ¶ 205]. Similar to Count XIV, this allegation alone is little more than a threadbare legal

---

[5]     Moreover, Kimera does not expressly challenge any of the four basic elements required for Selinger's negligence claim. In its Reply, Kimera states that it "could not find any cases which provided the alternative elements as they were supposedly modified by *Willis*." [D.E. 158 at 2]. Perhaps Kimera should have appreciated the fact that Count XIV and Count XV expressly address, in rapid succession, the elements of duty, breach, causation, and damage.

conclusion. But, when viewed in context with the other allegations concerning the physical impact visited upon Selinger by Jelinek, the Court finds that the breach element has been sufficiently alleged.

Regarding *causation*, Selinger alleges that the "multiple incidents" of physical contact between Selinger and Jelinek "caused a physical impact" on Selinger. [D.E. 95, ¶ 206].  The "multiple incidents" of physical contact certainly includes the allegation made by Selinger that Jelinek battered her after plying her with multiple alcoholic beverages. Accordingly, Selinger further alleges that this conduct was the "actual and reasonably foreseeable cause of emotional distress and psychological damage" to Selinger. [D.E. 95, ¶ 210]. Given the serious nature of the alleged physical impact, the Court finds that causation has been sufficiently alleged.

Regarding *damage*, Selinger alleges that, due to the physical impact visited upon her by Jelinek, she "suffered severe emotional distress and psychological harm." [D.E. 95, ¶ 207]. Again, Florida law allows for recovery for emotional distress that has been caused by a physical impact. Thus, when viewed in context with the allegations that Selinger endured non-consensual contact from Jelinek that was sexual in nature, the Court finds that Selinger has plausibly alleged the damage element of her negligence claim.

Regarding *vicarious liability*, the Court notes again that Kimera has not challenged Selinger's allegation of liability for Jelinek's actions pursuant to "the doctrine of *respondeat superior*." [D.E. 95, ¶ 211]. Considering that Jelinek's position with Kimera as well as the purported substance of the meeting between Jelinek and

Selinger that led to the alleged battery, the Court finds that, for the purposes of a motion to dismiss, Selinger has sufficiently alleged vicarious liability. Thus, in summary, Kimera and Jelinek's motions to dismiss Count XV should be **DENIED**.

C.   ***Count XVI, the Invasion of Privacy (Public Disclosure of Private Facts) claim against Ross and Kimera, should not be dismissed.***

Florida has adopted the Restatement's test of invasion of privacy based on publication of private facts. *Leach v. Dist. Bd. of Trustees of Palm Beach*, 244 F. Supp 3d 1334, 1339 (S.D. Fla. 2017) (citing *Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374 (Fla. 1989)). Accordingly, to state this type of invasion of privacy claim, a plaintiff must allege (1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern. *Id.* Kimera argues that the amended complaint fails to state a claim for invasion of privacy because Selinger has insufficiently alleged the elements of publication and offensiveness.

1.   ***The "publication" element has been sufficiently alleged.***

Selinger alleges that, during and after her employment at Kimera, Ross and/or other persons working for Kimera engaged in a "campaign" to disseminate "confidential and highly sensitive information of a sexual nature" about Selinger to people with whom Ross knew Selinger had a relationship, including her friends and associates. [D.E. 95, ¶¶ 5, 103]. This alleged "campaign" apparently included factually true statements of an "adult nature" as well as defamatory statements, and it was allegedly intended to harass, humiliate, and intimidate Selinger as well as ruin her professional reputation. [D.E. 95, ¶¶ 5, 103, 215].

Under Florida law, except in cases of physical invasion, the publication of private facts requires publication to the general public (e.g., newspaper article) or to "a large number of persons." *See Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989) (applying Florida law). Put differently, the fact made public must be communicated "to the public at large or to so many people that the matter *must be regarded as substantially certain to become one of public knowledge.*" *Leach*, 244 F. Supp. 3d at 1339 (citing Restatement (Second) of Torts § 652D cmt. a (1977)) (emphasis in original). Determining whether a fact is substantially certain to become one of public knowledge involves a fact-intensive inquiry that depends upon the content and recipient of the message. *See, e.g.*, *Williams v. City of Minneola*, 575 So. 2d 683, 689 (Fla. 5th DCA 1991) (noting that publication to only one person could result in liability for invasion of privacy if that one person would predictably share the information with many others).

Where the content of the disclosed facts is sexual in nature, an allegation of publication of such facts to the plaintiff's professional network has been held sufficient to survive a motion to dismiss. *See Smith v. Volusia County, Fla.*, No. 11-CV-35-ORL-28GJK, 2011 WL 1598741, at *6 (M.D. Fla. Apr. 28, 2011) (applying Florida law). In *Smith*, a 17-year-old female lifeguard was asked on a date by her 36-year-old male supervisor. *Id*. at *1. During the date, the supervisor purchased alcohol for the lifeguard at a sports bar and then invited her to return with him to his home. *Id*. The lifeguard returned to the supervisor's home and, while there, the two engaged in non-consensual sexual activities. *Id*. The lifeguard notified her parents of the

sexual abuse and, soon thereafter, her parents notified the director of the beach patrol. *Id*. Following an investigation that resulted in the supervisor's resignation, the director of the beach patrol allegedly "blamed" the lifeguard for the incident and "let it be known to others in the administration that he would have preferred to fire [the lifeguard] but was afraid that he would be sued if he did so." *Id*. As a result, the lifeguard alleged, her sexual encounter with the supervisor became "widely known" among other individuals in the beach patrol. *Id*. Accordingly, the lifeguard sued the director of the beach patrol for invasion of privacy. *Id*. at \*2. The director of the beach patrol argued in his motion to dismiss that the lifeguard failed to sufficiently allege the elements of publication and offensiveness. *Id*. at \*6. The court rejected both arguments, finding the publication element to be sufficiently alleged. *Id*.

Here, there is no allegation regarding the precise number of people who were informed about these private facts relating to Selinger's sex life. But it is reasonable to infer from amended complaint that a "campaign" designed to harass, humiliate, and intimidate Selinger – as well as ruin her professional reputation – is a "campaign" that targets a large number of people. Accordingly, it is plausible that these private facts were substantially certain to become public knowledge among, at the very least, Selinger's personal and professional networks. Following the guidance of *Smith*, the Court rejects Kimera's argument to the contrary. *Id*.; *see also Conradis v. Buonocore*, No. 18-cv-1486, 2021 WL 4243720, at \*4-5 (M.D. Fla. Sept. 17, 2021) (finding that the publication element had been sufficiently alleged where the defendant purportedly distributed nude photos of the plaintiff on the internet).

18

Kimera has had ample time during discovery to determine the full extent of the publication at issue and, therefore, its argument may be better received by the Court when the procedural posture permits Kimera to introduce supportive evidence. On a motion to dismiss, however, Kimera's argument fails.

### 2.    *The "offensiveness" element has been sufficiently alleged.*

With respect to the other three elements of the tort, the allegations in the amended complaint – when viewed in a vacuum – appear to be little more than a rote recitation of the cause of action. Selinger alleges that the published facts were "private" in that they contained "secret information of an adult nature," that the published facts were "offensive," and that the published facts were "not of any public concern." [D.E. 95, ¶¶ 215-17]. To be clear, Kimera is not challenging the sufficiency of the allegations concerning the published facts' qualification as private facts that were not of public concern. Accordingly, the Court agrees that, in this context, defining the published facts as "sexual" and/or "adult" in nature sufficiently illustrates that the published facts are private and not of public concern.

But Kimera does dispute the sufficiency of the allegations concerning the "offensiveness" element of Selinger's invasion of privacy claim. Again, however, Kimera's argument is misplaced at this phase of the litigation. And again, *Smith* is instructive.

Under Florida law, which follows the Restatement's articulation of the tort, the publication of the private facts must be "highly offensive to a reasonable person." *See Cape Publications*, 549 So. 2d at 1377 (quoting Restatement (Second) of Torts § 652D

(1977)). Accordingly, the "offensiveness" element is satisfied if "the publicity given to the plaintiff is such that a reasonable person would feel justified in feeling seriously aggrieved by it." *Smith*, 2011 WL 1598741, at *6 (quoting Restatement (Second) of Torts § 652D cmt. c (1977)) (alteration adopted).

Here, the Court finds that Selinger would feel justified in feeling seriously aggrieved by the publication of facts about her sex life, perhaps even more so than the plaintiff in *Smith*, considering that one of the people accused of publicizing these facts – Ross – also stands accused of engaging in non-consensual sexual activity with Selinger. The reasonable inferences to be drawn from such allegations are quite distasteful (if true) and, at the motion to dismiss phase, Selinger's description concerning the offensiveness of the alleged publication is plausible and, therefore, sufficient. In summary, Kimera's motion to dismiss Count XVI should be **DENIED**.

**D.** **_Count XVII, the Defamation claim against Kimera, Ross, and Jelinek, should not be dismissed._**

Both Kimera and Jelinek contend that Selinger's defamation claim should be dismissed and, to a substantial degree, the arguments supporting their positions overlap. Accordingly, the Court begins with the elements of the tort and a recitation of the pleading standards that apply to Count XVII.

Under Florida law, defamation has five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private individual; (4) actual damages; and (5) the statement must be defamatory. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v.*

*Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).  Although Florida substantive law applies to Selinger's defamation claim, federal procedural law governs. *See Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986) (citing *Hanna v. Plumer*, 380 U.S. 460, 465-74 (1965)) (concerning a defamation claim brought under diversity jurisdiction); *see also Davenport v. Thor Motor Coach, Inc.*, 661 F. App'x 997, 999 (11th Cir. 2016) ("[B]ecause jurisdiction arises under 28 U.S.C. § 1367, the applicable law depends on whether the issue is substantive or procedural."). "While Florida requires, perhaps wisely, specific allegations of publication in the complaint," a federal court "need not adhere to a state's strict pleading requirements" and should instead follow Rule 8(a). *Caster*, 781 F.2d at 1570; *see also In re Prudential of Florida Leasing, Inc.,* 478 F.3d 1291, 1299 (11th Cir. 2007) (holding that state law ordinarily does not govern the procedure of federal courts).

The Eleventh Circuit's approach is consistent with other circuits that expressly reject any heightened pleading standard for defamation cases. *See, e.g., Hatfill v. New York Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) ("While the Federal Rules of Civil Procedure require more specific pleading in certain cases, defamation cases are not among them. . . . Thus, the usual standards of notice pleading apply in defamation cases such as this one.").

So, when pleading a Florida defamation claim in federal court, the plaintiff "must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Five for Entertainment, S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012).

21

Beyond that further factual pleading is not required by Rule 8, such as the identification of the person or category of persons who received the publication at issue. *See, e.g., Nationwide Relocation Servs., Inc. v. Walker,* 2008 WL 11333712, at *6 (S.D. Fla. Feb. 29, 2008) (rejecting defendants' theory that to state a claim for defamation a complaint had to identify the persons to whom the defamatory comments were made).

Citing to Florida cases like *Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So. 2d 1025, 1027-28 (Fla. 3d DCA 1981), Kimera and Jelinek argue that Selinger is indeed required to plead the identity of the publication's recipient to properly state a claim. But Selinger correctly points out that this pleading requirement is a creature of Florida civil procedure, which does not apply in federal court. And at the very least, if this principle was intended to be incorporated as part of state substantive law, the legislature would make that expressly clear. It has not taken that step to date. We are left with a Florida common law defamation claim, which is governed by federal procedural rules in an action filed in federal court.

To rebut this conclusion, Kimera also cites two cases from this District in which the plaintiff was required to allege the identity of the person(s) who heard, read, or otherwise received the defamatory statements. *See Maritime Executive, LLC v. Larson Electronics*, *LLC*, No. 17-cv-60323, 2018 WL 2938376, at *4 (S.D. Fla. June 11, 2018) ("Because Maritime does not identify a single third-party who it contends accessed the alleged defamatory material within Florida, it has failed to state a cause of action for defamation and failed to satisfy Florida's long-arm statute."); *Aflalo v.*

*Weiner*, No. 17-cv-61923, 2018 WL 3235529, at *4 (S.D. Fla. July 2, 2018) ("To successfully plead a claim for defamation *per se*, the plaintiff must allege the 'identity of the particular person to whom the remarks were made with a reasonable degree of certainty' to afford the defendant 'enough information to determine affirmative defenses.'").

Obviously, *Maritime Executive* and *Aflalo* appear to conflict with *Caster*. In that case, the Eleventh Circuit's rule, which mirrors the Fourth Circuit's, seems to be the rule of decision that we must follow in this case, especially where there are no jurisdictional hurdles that may require greater factual detail to satisfy other statutory prerequisites.   As a result, to survive Kimera and Jelinek's motions to dismiss Selinger's defamation claim, this amended complaint must only contain "short and plain" statements that plausibly show her entitlement to relief. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2). Accordingly, the amended complaint need not allege the identity of the publication's recipient, as required by Florida courts. *Caster*, 781 F.2d at 1570. But we acknowledge the possibility that other circumstances may arise where, absent an allegation relating to the recipient's identity, the plaintiff's defamation claim simply is not plausible or viable. *See, e.g.*, *Maritime Executive,* 2018 WL 2938376, at *4; *Aflalo*, 2018 WL 3235529, at *4.   We do not see how that exception to the general rule applies in this case.

Having articulated the elements of defamation under Florida law and the associated pleading requirements in federal court, the Court must next determine

whether Count XVII can survive Kimera and Jelinek's motions to dismiss. The Court finds that Selinger has sufficiently alleged a cause of action for defamation against Kimera and Jelinek. And because Selinger's claim can be split into two essential categories, the Court will explore each in turn.

1. ***The allegedly defamatory statements made by Jelinek with regard to the replacement of Selinger as Kimera's Chief Regulatory Officer.***

The amended complaint alleges that, in March 2019, Kimera hired a new Chief Regulatory Officer without informing Selinger that she was being replaced. [D.E. 95, ¶ 90]. Jelinek "sent an email to the entire staff announcing the hire, in which he falsely stated that [Selinger], through the discontinuation of an email address assigned to her, was 'currently undergoing lobotomy and exosome treatment.'" [D.E. 95, ¶ 91]. It is further alleged that Jelinek "intentionally published false statement(s) about [Selinger] to unprivileged third parties concerning the reasons [Selinger] was being replaced with a new Chief Regulatory Officer" at Kimera. [D.E. 95, ¶ 222]. "One or more of the false statement(s) rose to the level of being defamatory per se insofar as they, among other things, imputed to [Selinger] conduct, characteristics, or a condition incompatible with the proper exercise of her lawful business, trade, profession, or office." [D.E. 95, ¶ 224]. "Each/any given publisher knew at all times that these statement(s) were false, yet maliciously, knowingly, and willfully made these false statements to unprivileged third parties anyway, in order to damage [Selinger's] reputation and well-being." [D.E. 95, ¶ 225]. Jelinek's defamatory statement(s) about Selinger were "made within the course and scope" of his

employment with Kimera, "thereby subjecting Kimera to liability for its agents' conduct under the doctrines of *respondeat superior* and/or ratification." [D.E. 95, ¶ 226]. "The falsity of these statement(s), made through Kimera's agents, has caused and continues to cause injury to [Selinger]." [D.E. 95, ¶ 228].

With respect to the defamatory statement(s) allegedly made by Jelinek as it pertains to Selinger's demotion from the position of Chief Regulatory Officer, the Court finds that Selinger has sufficiently alleged her claim for defamation against Kimera and Jelinek. Although her damage allegation is somewhat conclusory, it must be remembered that, where a defamatory statement concerns one's trade or profession, Florida law presumes actual damages. *See Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1342 (M.D. Fla. 2003) (applying Florida law and discussing defamation *per se*). Not only has Selinger plausibly alleged the elements of defamation under Florida law, but she has also identified the speaker (Jelinek), a description of the statement (false reasons for the removal of Selinger from her office), and the time frame during which the statement(s) were made (during and/or after March 2019). Considering Jelinek's alleged position within the company and the nature of his statements, the Court finds that Selinger has also sufficiently alleged vicarious liability. Accordingly, Kimera and Jelinek's arguments for dismissal fail.

**2.**    ***The allegedly defamatory statements made by Ross, Jelinek, "and/or others at Kimera" concerning Selinger's veracity and job performance.***

The alleged defamatory comments were not limited to statements concerning Selinger's demotion from the position of Chief Regulatory Officer. As discussed above,

Selinger alleges that Kimera's CEO engaged in a "campaign" to ruin her professional reputation (and intimidate, harass, and humiliate Selinger) through the use of defamatory statements and the public disclosure of private facts. [D.E. 95, ¶ 5]. Selinger further alleges that, subsequent to her filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Ross, Jelinek, "and/or others at Kimera" made false statements to unprivileged third parties to convince them that Selinger was a liar, that her claims were not to be believed, and that she was bad at her job. [D.E. 95, ¶¶ 101-04, 223].

Here, the Court finds again that, when viewing the amended complaint as a whole, Selinger sufficiently alleges a defamation claim against Kimera and Jelinek with regard to statements about her veracity and job performance. Given that federal pleading rules require Selinger to allege certain facts relating to the speaker of the defamatory statements (Ross, Jelinek, and/or others at Kimera), the content of those statements (concerning Selinger's veracity and job performance), and the time frame in which they were made (after Selinger filed the EEOC charge), Kimera argues that Selinger's use of the phrase "and/or others at Kimera" is improper because it fails to plausibly allege the identity of the speaker and, therefore, precludes Kimera from effectively articulating its affirmative defenses. The Court disagrees.

Prior to Selinger's filing of her EEOC charge, she allegedly told Lisa McMillion, Kimera's Co-CEO and Vice President ("McMillion"), about the sexual harassment and discrimination that she had been experiencing from Ross and Jelinek. [D.E. 95, ¶ 98]. Because of her complaints to individuals at Kimera – including McMillion, who also

happens to be Ross' sister – regarding the sexual harassment and discrimination she was experiencing, Selinger alleges that she was terminated by Kimera in a retaliatory fashion. [D.E. 95, ¶¶ 98-101]. And so, given McMillion's position within the company, her relationship with Ross, and her alleged response to Selinger's claims, it is plausible that the defamatory statements came from someone at Kimera other than Ross or Jelinek. It is also plausible that the defamatory statements were made within the scope of their employment or agency with Kimera, which Selinger alleges to be the case. [D.E. 95, ¶ 226].

Kimera and Jelinek have had ample opportunity to assess the particulars of Selinger's defamation claims through discovery and internal investigation. They should now be able to confidently answer the amended complaint and articulate any of their affirmative defenses. Of course, it remains Selinger's burden to ultimately prove that Kimera and/or Jelinek made defamatory statements concerning her veracity, job performance, and removal from her office. Thus, Kimera and Jelinek's arguments may be far more persuasive when the procedural posture allows the Court to consider evidence beyond the four corners of the amended complaint. But here, where the Court is confined to the pleading and bound to accept Selinger's factual allegations as true, Kimera and Jelinek's arguments fail. Accordingly, Kimera and Jelinek's motions to dismiss should be **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Kimera and Jelinek's motions to dismiss be **DENIED** and that they be required to amend, within fourteen days, their answer to incorporate defenses to Counts XV and XVII.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 3d day of January, 2022.

*/s/ Edwin G. Torres*

EDWIN G. TORRES
United States Magistrate Judge